**THIRD DIVISION**
**DILLARD, C. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0615. GEORGIA DEPARTMENT OF COMMUNITY
HEALTH v. EMORY UNIVERSITY, et al.

GOBEIL, Judge.

The Commissioner of the Georgia Department of Community Health ("the Commissioner") ruled that Emory University Hospital ("EUH") could not sever its certificate of need ("CON") for a 16-bed, in-patient rehabilitation program from its hospital license[1] and thereafter transfer both the program and the CON to another, separately-licensed facility located on the Emory University campus. Instead, the Commissioner determined that the separately licensed facility, Emory Rehabilitation Hospital ("Emory Rehab"), would be required to obtain its own CON for the 16

---

[1] In this context, the term "license" refers to a permit issued to a health care facility by the Department of Community Health's Healthcare Facility Regulation Division, pursuant to OCGA § 31-7-1, et seq. A facility's license is separate and distinct from its CON authorization, which is governed by OCGA § 31-6-40 et seq.

additional beds it sought to acquire from EUH. EUH and Emory Rehab (collectively, "Emory") appealed the Commissioner's decision to the Superior Court of DeKalb County, which reversed the Commissioner and held that EUH could transfer the CON for its in-patient rehabilitation program and the 16 beds associated with that program to Emory Rehab, without Emory Rehab having to obtain its prior CON approval.

The Department of Community Health ("DCH") now appeals the superior court's ruling, arguing that the court committed legal error in finding: (1) that a CON issued to a specific party for a specific program could be transferred (together with the program) to a different healthcare facility not named on the original CON; and (2) that Emory Rehab's addition of 16 beds to its existing in-patient rehabilitation program did not constitute an expansion of that program requiring CON review and approval.[2] For reasons explained more fully below, we agree that the superior court's order conflicts with the plain language of Georgia's CON statute (OCGA § 31-6-40,

---

[2] Emory devotes a significant portion of its brief to arguing that DCH has failed to identify with the requisite specificity any ruling by the superior court that constitutes legal error. We agree that DCH could have better articulated its enumeration of error. Nevertheless, despite Emory's arguments to the contrary, an assertion that the trial court's holding on one or more issues is in conflict with the relevant statutory law identifies a specific ruling by the superior court constituting legal error. Moreover, it appears that Emory had no problem discerning DCH's claims of error, as its brief responded to the same.

2

et seq.) and the administrative regulations promulgated thereunder. Accordingly, we reverse that order.

*The Underlying Facts*

The facts underlying this appeal are undisputed and show that EUH is owned by Emory University and is located at 1364 Clifton Rd., NE on the University's campus. From 1977 until July 1, 2014, EUH operated an in-patient rehabilitation facility known as the Center for Rehabilitation Medicine (the "CRM"). The CRM was located at 1441 Clifton Rd. NE, in a freestanding building on the Emory University campus. The CRM operated under EUH's license, and EUH had a CON that allowed the CRM to operate a 56-bed comprehensive in-patient rehabilitation program ("CIPR program"). In 2013, EUH sought to "decouple" the CRM from its license, obtain a separate license for the CRM, and then transfer the CON for the CRM (which had been held under EUH's license) to the now independently licensed CRM. Thus, in November 2013, EUH requested a letter of determination from DCH confirming that it did not need to obtain prior CON review and approval to decouple both the CRM and the CRM's CON from EUH's license. DCH issued the requested letter of determination, confirming that EUH could proceed with its plan without obtaining a new CON for the CRM. DCH determined that a new and separate CON was not

3

required because "[t]he proposed decoupling of the health care facility license does not involve any defined new institutional health service because there will be no bed increase, no new services offered at EUH or the CRM, and no capital expenditure above the [statutory] threshold." Additionally, DCH noted that even after the decoupling "[t]here will still be only one CIPR service at the CRM location within the scope of the [existing CON]."

After the DCH letter of determination issued, EUH decoupled the CRM from its license, obtained a separate license for the facility, and transferred the CON to the new license. On July 1, 2014, the CRM was acquired by ES Rehabilitation, LLC,[3] which now operates the facility and its CIPR program under the name Emory Rehabilitation Hospital. Independent of the CRM/Emory Rehab, however, EUH continued to maintain a CON for its own 16-bed CIPR program.[4] That program is housed inside the hospital, is administered by EUH for its patients, and operates under EUH's hospital license.

---

[3] ES Rehabilitation, LLC is a joint venture that is majority owned by Emory Rehabilitation, LLC, a wholly-owned subsidiary of Emory Healthcare, Inc. Emory Healthcare, in turn, is wholly owned by Emory University, d/b/a Emory University Hospital.

[4] It is undisputed that this CON is separate from EUH's CON for an acute care hospital.

*Administrative Proceedings*

In 2016, EUH and Emory Rehab agreed that EUH would decouple its CIPR program and the associated CON from its hospital license and transfer both the 16 beds associated with the program and the CON to Emory Rehab. On December 16, 2016, EUH and Emory Rehab submitted a joint request for determination to DCH seeking confirmation that such a decoupling and transfer would not require prior CON review and approval.

On February 24, 2017 DCH provided the requested letter of determination, informing Emory that it could relocate the EUH CIPR program beds to the Emory Rehab facility, but that it could not transfer either the CON for that program or the program itself to Emory Rehab. DCH explained that statutory law did not allow one licensed healthcare facility to transfer a CON to another licensed healthcare facility, unless the transfer occurs as part of a transaction whereby the transferee is acquiring the transferor. DCH further noted that the transfer in this case would result in an expansion of Emory Rehab's existing CIPR program from 56 beds to 72 beds. Thus, under applicable regulations, before acquiring the EUH CIPR program, Emory Rehab would need to obtain prior CON review and approval allowing it to expand its existing program.

Emory filed a request for an administrative hearing on DCH's determination, and that hearing occurred in June 2017. The hearing officer thereafter issued a written order in which he reversed DCH's initial determination and granted summary adjudication in favor of Emory. In doing so, the hearing officer relied on prior DCH determinations to conclude that EUH could decouple the CON for its CIPR program from its hospital license, as such decoupling would not result in any new services, new beds, or capital expenditures above the statutory threshold set forth in the CON statute. The hearing officer further concluded that Emory Rehab could acquire EUH's CIPR program without prior CON review and approval. In support of this conclusion, the hearing officer found that EUH's CIPR program, standing alone, met the statutory definition of a "healthcare facility." Thus, because Emory Rehab was acquiring a healthcare facility, it could also acquire the CON belonging to that facility. Additionally, the officer found that Emory Rehab's addition of 16 beds to its CIPR program did not constitute an expansion of its existing program requiring prior CON review and approval. The officer again reasoned that the acquisition of EUH's CIPR beds was the equivalent of a merger of two healthcare facilities, who were combining their CONs under a single license, and therefore no additional beds were "actually being created or constructed."

DCH appealed the hearing officer's order to the Commissioner. Relying on the rationale set forth in DCH's original letter of determination, the Commissioner reversed the order of the hearing officer and found that EUH could not transfer the CON for its CIPR program and that Emory Rehab could not acquire that program without first obtaining CON review and approval.

*The Superior Court Order*

Emory challenged the Commissioner's decision, filing a petition for judicial review in DeKalb County Superior Court. Following a hearing, the superior court granted Emory's petition and reversed the decision of the Commissioner. With respect to its reversal of the Commissioner's conclusion that EUH could not decouple a CON from its license and then transfer the CON to another licensed healthcare facility, the superior court's rationale is unclear. It appears, however, that the court found, at least implicitly, that EUH's CIPR program constituted a "health care facility" being acquired by Emory Rehab. Based on this finding, the court concluded that DCH violated the CON statute and exceeded its authority thereunder because transfer of the CIPR program did "not involve the establishment of a new healthcare

facility or other new institutional health service."[5] Additionally, the court concluded that DCH's determination with respect to the decoupling and transfer of the CON was "arbitrary and capricious" because DCH had mischaracterized EUH's request as involving the severing and transferring of "portions of an existing CON" rather than a decoupling of a program-specific CON from EUH's hospital license. Put another way, the court found that DCH had attempted to treat the CON for the CIPR program as part of EUH's CON for an acute care hospital. The court also relied on prior determinations by DCH addressing when a hospital may decouple a CON from its license and transfer it to the license of another facility to find that DCH's decision was arbitrary and capricious.

With respect to the Commissioner's ruling that Emory Rehab was required to obtain CON review and approval before expanding its CIPR program from 56 to 72 beds, the superior court found that Emory Rehab's acquisition of EUH's CIPR program was the equivalent of Emory Rehab acquiring a health care facility. Thus, the court concluded that Emory Rehab could combine both CONs under its license.

---

[5] Under OCGA § 31-6-40, a CON must be obtained for "any new institutional health service," which is defined to include, inter alia, the "construction, development, or other establishment of a new health care facility." OCGA § 31-6-40 (a) (1).

8

The court also found that the Commissioner's ruling on this issue was arbitrary and capricious because it violated the CON statute and exceeded DCH's authority thereunder. The court further concluded that in making his ruling, the Commissioner had mischaracterized the facts underlying Emory's request for a determination. According to the superior court, this mischaracterization resulted from DCH's "insistence" that EUH was seeking to transfer only hospital beds, as opposed to EUH's entire CIPR program.

*Questions on Appeal*

DCH filed an application for discretionary appeal from the superior court's order. We granted that application, and this appeal followed.

A court called upon to review a final agency decision "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." OCGA § 50-13-19 (h). Thus, the reviewing court may reverse an agency decision only if:

> substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6)

9

Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Id.

In light of this statutorily limited scope of review, a reviewing court is limited to determining two things. First, the reviewing court must determine whether any evidence supported the agency's findings of fact. *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 161 (3) (664 SE2d 223) (2008). Next, the court assesses whether the agency's legal conclusions based on those factual findings are erroneous. Id. Thus, in an appeal from a superior court's review of a final agency decision, "our duty is not to review whether the record supports the superior court's decision, but whether the record supports [the factual findings underlying] the final decision of the administrative agency." *North East Ga. Med. Center v. Winder HMA, Inc.*, 303 Ga. App. 50, 55 (2) (693 SE2d 110) (2010) (citation and punctuation omitted). We also "determine whether the superior court has[,] in its own final ruling[,] committed an error of law." *Carolina Tobacco Co. v. Baker*, 295 Ga. App. 115, 118 (1) (670 SE2d 811) (2008) (citation and punctuation omitted).

The current appeal presents two legal questions. First, did the superior court err in finding that Georgia's CON statute allows EUH to sever the CON for its 16-bed

CIPR program from its hospital license and thereafter transfer both the CON and the program to another licensed healthcare facility? Second, did the superior court err in concluding that the CON statute and related regulations allow Emory Rehab to expand its 56-bed CIPR program to 72 beds by acquiring EUH's program and CON, and without obtaining prior CON review and approval for an expanded program? We address each of these questions below.

1. We first consider whether Georgia's CON statute allows EUH to decouple its CIPR program and related CON from its hospital license and thereafter transfer the same to Emory Rehab. At the outset of our analysis, we note that in concluding that EUH could engage in the proposed transaction, the superior court relied on prior determinations by DCH addressing when a hospital may decouple a CON from its license and transfer it to the license of another facility. We find this reliance misplaced, for several reasons.

First, as explained more fully below, courts are not bound by administrative rulings. *Sawnee Elec. Membership Corp. v. Ga. Public Serv. Comm.*, 273 Ga. 702, 706 (544 SE2d 158) (2001). Moreover, as articulated in the administrative regulations applicable to the CON process, determinations by DCH

11

> are conclusions of [DCH] that are based on specific facts and are limited
> to the specific issues addressed in the request for determination. . . .
> Therefore, the conclusions of a specific determination . . . shall have no
> binding precedent in relation to parties not subject to the request and to
> other facts or factual situations that are not presented in the request.

Ga. Comp. R. & Regs. 111-2-2.10 (1) (a). And here, the prior determinations relied on by the superior court have little, if any, relevance to the case at hand.

Each of those determinations involved a situation where a hospital held a separate CON for a distinct physical facility that it operated under the hospital's license. Thus, in those cases, the hospital was seeking to decouple *both* the facility and the separate CON it held for that facility from the hospital's license, have the separate facility obtain its own license, and then transfer the CON *for that facility* to the facility's license. And in each of those cases, DCH found that the hospital could engage in that process without obtaining prior CON review and authorization. See *In Re: Savannah Rehabilitation Hospital*, DET 2014-110; *In Re: Hospital Authority of Lowndes County, et al.*, DET 2012-156; *In Re: Southern Regional Health System, et al.*, DET 2008-013; *In Re: Gwinnett Hospital System, et al.*, DET 2008-008. The facts underlying these determinations, however, are not analogous to the facts underlying this appeal. Specifically, EUH is not seeking to decouple a CON that it holds for a

12

program administered by and located at Emory Rehab. Instead, EUH is seeking to decouple a CON for a program for EUH patients that is administered by EUH, under EUH's hospital license, and that is located in EUH's hospital facility.[6]

Finally, and most importantly, the superior court erred in relying on these prior DCH determinations because the question before the court was not whether DCH had, in other situations, previously permitted a decoupling of a CON from a hospital license. Rather, as noted above, the question was whether Georgia's CON statute allows Emory to avoid prior CON review and approval for the transaction proposed in this case. We turn now to that question.

Georgia's CON statute provides, in relevant part:

A certificate of need shall be valid only for the defined scope, location, cost, service area, and person named in an application, as it may be amended, and as such scope, location, service area, cost, and person are approved by [DCH], *unless such certificate of need owned by an existing health care facility is transferred to a person who acquires such existing facility. In such case, the certificate of need shall be valid for*

---

[6] In requesting a letter of determination, EUH described it CIPR program as "sixteen (16) in-patient rehabilitation beds" located at EUH (1364 Clifton Rd.) EUH also explained that the program is offered "as part of [EUH's] in-patient hospital complement under its general acute care license." Thus, the program is operated by EUH, for patients of EUH, in the EUH hospital facility.

13

*the person who acquires such a facility* and for the scope, location, cost, and service area approved by [DCH].

OCGA § 31-6-41 (a) (emphasis supplied).

Presumably relying on the above-italicized language, the superior court implicitly found that EUH's CIPR program, standing alone, constitutes a "health care facility" within the meaning of OCGA § 31-6-41 (a). Thus, the court apparently reasoned that Emory Rehab's acquisition of EUH's CIPR program meant that EUH could transfer to Emory Rehab the CON associated with that program. We disagree.

For purposes of the CON statute, "health care facility" is defined as:

hospitals; destination cancer hospitals; other special care units, including but not limited to podiatric facilities; skilled nursing facilities; intermediate care facilities; personal care homes; ambulatory surgical centers or obstetrical facilities; health maintenance organizations; home health agencies; and diagnostic, treatment, or rehabilitation centers . . .

OCGA § 31-6-2 (17).[7]

_____

[7] Notably, Emory's brief fails to acknowledge this definition. As a result, Emory does not offer any reasoned argument or citation to legal authority to support its argument that EUH's CIPR program falls within the statutory definition of "health care facility."

The statute further defines different types of health care facilities as "institutions" or "facilities," indicating that, as a general rule, health care facilities have a distinct and self-contained physical location. See OCGA § 31-6-2 (1) ("'[a]mbulatory surgical center or obstetrical facility' means a public or private facility, not part of a hospital, . . ."); OCGA § 31-6-2 (13) ("'[d]estination cancer hospital' means an institution with a licensed bed capacity of 50 or less . . . "); OCGA § 31-6-2 (16) ("'diagnostic, treatment, or rehabilitation center' means any professional or business undertaking . . . which offers . . . any clinical health service in a setting which is not part of a hospital . . ."); OCGA § 31-6-2 (21) ("'[h]ospital' means an institution which is primarily engaged in providing [services] to in-patients . . ."); OCGA § 31-6-2 (22) ("'[i]ntermediate care facility' means an institution which provides . . . health related care and services to individuals . . ."); OCGA § 31-6-2 (34) ("'[s]killed nursing facility' means a public or private institution or a distinct part [thereof] which is primarily engaged in providing in-patient skilled nursing care . . ."). In other words, the language of the statute indicates that a healthcare facility does not generally house and administer a second healthcare facility for the benefit of the first facility's patients.

Reading OCGA § 31-6-2 as a whole, therefore, it is clear that the definition of "health care facility" does not encompass a specialized program operated by and within a licensed healthcare facility, such as a hospital. See *Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013) (when construing a statute, "we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would") (citations and punctuation omitted). And this conclusion holds true even though the specialized program – such as the CIPR program at issue – has its own CON. See OCGA § 31-6-2 (21) (defining "hospital" as an institution that provides "to in-patients, by or under the supervision of physicians, . . . Rehabilitation services for the rehabilitation of injured, disabled, or sick persons . . .").

In an effort to avoid this conclusion, Emory relies on DCH's determination letter, issued in February 2017. As set forth in the letter, DCH concluded that EUH could relocate its 16 CIPR beds to Emory Rehab's location without prior CON review and approval. DCH further stated that its conclusion was based on an exception to the

CON statute found at OCGA § 31-6-47 (a) (24). Under that statutory provision, the CON statute does not apply to

> [t]he relocation of any skilled nursing facility, intermediate care facility or micro-hospital within the same county, . . . and any other healthcare facility in an urban county within a three-mile radius of the existing facility so long as the facility does not propose to offer any new or expanded clinical health services at the new location.

Citing this language, DCH concluded that "EUH is authorized to relocate its sixteen (16) CIPR beds on its campus as long as the varying locations are not more than three (3) miles apart or within more than one county."

On appeal, Emory argues (as it did below) that DCH could not treat the EUH CIPR program as a healthcare facility for purposes of allowing the program to relocate, but refuse to treat it as such a facility when determining whether EUH could decouple and transfer the program and accompanying CON. We are not persuaded.

We first note that given the statutory definition of health care facility, DCH's decision, set forth in the February, 2017 determination letter, to treat EUH's CIPR program as a healthcare facility under OCGA § 31-6-47 (a) (24) violated the plain language of the CON statute and therefore exceeded DCH's authority. See OCGA § 31-6-21 (delegating to DCH the authority to administer the CON program in

17

accordance with the statute); *Albany Surgical, P. C. v. Dep't of Community Health*, 257 Ga. App. 636, 638 (2) (572 SE2d 638) (2002) ("courts have consistently held that [DCH] lacks authority to expand [the statutory] exceptions" to the CON statute); *N. Fulton Med. Center v. Stephenson*, 269 Ga. 540, 543 (1) (501 SE2d 798) (1998) ("administrative agencies . . . are not authorized to enlarge the scope of . . . a properly-enacted statute"). See also *Sawnee Elec. Membership Corp.*, 273 Ga. at 704 ("legislative exceptions in statutes are to be strictly construed and should be applied only so far as their language fairly warrants") (citation and punctuation omitted).

More importantly, this Court is not bound by any DCH determination that EUH's CIPR program, standing alone, constitutes a health care facility. The principle that courts are not bound by an administrative agency's interpretation of a statute, including a statute the agency is charged with administering, is well-established. *Sawnee Elec. Membership Corp.*, 273 Ga. at 706. Instead, the judicial branch must "make an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the statute." Id. See also *Palmyra Park Hosp. v. Phoebe Sumter Med. Center*, 310 Ga. App. 487, 491 (1) (714 SE2d 71) (2011) ("[w]hile reviewing courts defer to agency interpretations of the statutes [an agency is] charged with administering, that deference applies only as far

18

as the agency interpretation is consistent with the statute" See *City of Guyton v. Barrow*, Case No. S18G0944, 2019 W.L. 2167460, at 1 (Ga. May 20, 2019) ("At the core of the judicial power is the authority and the responsibiity to interpret legal text"). And as explained supra, we find that the plain language of OCGA § 31-6-2 forecloses any argument that a specialized program for which a hospital holds a CON, which is administered by the hospital for its patients, and which is physically located within the hospital itself, constitutes a healthcare facility under the CON statute.

In light of the foregoing, we find that the superior court committed legal error when it concluded that EUH could decouple the CON for its CIPR program from its hospital license and transfer the program and the CON to the separately-licensed Emory Rehab without Emory obtaining prior CON review and approval.

2. We next consider whether Emory Rehab can expand its 56-bed CIPR program to 72 beds by acquiring EUH's program and accompanying CON, and without obtaining prior CON review and approval. Like the first issue, this question is controlled by the plain language of the CON statute.

OCGA § 31-6-40 provides, in relevant part:

On and after July 1, 2008, any new institutional health service shall be required to obtain a certificate of need pursuant to this chapter. *New*

19

*institutional health services include: . . . [a]ny increase in the bed capacity of a health care facility* except as provided in Code Section 31-6-47.

OCGA § 31-6-40 (a) (4) (emphasis supplied). Additionally, Chapter 111-2-2.35[8] of Georgia's Administrative Code provides that "[a] Certificate of Need shall be required prior to the . . . expansion of an existing [CIPR] Adult Program." Ga. Comp. R & Regs. 111-2-2.35 (1) (a). And the chapter defines "expansion" as meaning "the addition of beds to an existing CON-authorized . . . [CIPR] Program." Ga. Comp. R & Regs. 111-2-2.35 (2) (c).

It is undisputed that Emory Rehab is a health care facility under the CON statute. See OCGA § 31-6-2 (17). And if Emory Rehab acquires EUH's 16-bed CIPR program, then Emory Rehab's CIPR program will expand from 56 beds to 72 beds. Under the plain language of both OCGA § 31-6-40 (a) (4) and Ga. Comp. R & Regs. 111-2-2.35, therefore, Emory Rehab must obtain a CON to add 16 additional beds to its CIPR program.[9] Accordingly, we find that the superior court erred as a matter of

_____

[8] This regulation addresses specific review considerations for CIPR services.

[9] For the reasons explained in Division 1, in acquiring EUH's CIPR program, Emory Rehab would not be acquiring a separate health care facility. Accordingly, the exception to the CON statute found at OCGA § 31-6-47 (a) (24) does not apply to Emory Rehab's proposed expansion to 72 beds.

20

law in concluding that Emory Rehab's acquisition of EUH's CIPR program did not require prior CON review and authorization.

For the reasons set forth above, we reverse the order of the superior court granting Emory's petition for judicial review.

*Judgment reversed. Dillard, C. J., and Hodges, J., concur.*