**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2025**

# In the Court of Appeals of Georgia

A25A1246. PROHEALTH HOME HEALTH-GEORGIA, LLC v. GEORGIA DEPARTMENT OF COMMUNITY HEALTH.

WATKINS, Judge.

This appeal presents the novel question of whether a home health applicant's appeal of the denial of its own application for a Certificate of Need ("CON") authorizes it to challenge the application of the "tiebreaker rules" by the Department of Community Health and the Department's subsequent award of a CON to a competing applicant without first complying with the opposition requirements outlined in OCGA §§ 31-6-43 (h); 31-6-44 (d); and Ga. Comp. R. & Regs. r. 111-2-2-.08. We conclude that it does not and that ProHealth Home Health-Georgia, LLC ("ProHealth") lacked standing to file an appeal which was, in effect, an objection to the grant of a CON to a competing provider. Accordingly, we affirm.

In March 2023, the Department issued a CON Batching Review Cycle Notification for Home Health Services ("Batching Notice"), notifying interested parties that the Department would accept applications for new home health services to meet the calculated numerical need in the region that included Fulton, Cobb, and Rockdale counties.[1] The Department received applications from six applicants, including ProHealth. Several applicants opposed competing applications. ProHealth responded to opposition to its own application, but did not oppose any of its competitors' applications.

The Department reviewed the batched applications jointly and issued a decision in September 2023. The Department applied the general review considerations, set forth in Ga. Comp. R. & Regs. § 111-2-2-.09,[2] and the specific review considerations

---

[1] See OCGA § 50-4-7 (a) (3) (creating 12 state service delivery regions, including State Service Delivery Region 3, "[f]or the purpose of delivering state services to local units of government and citizens and for the purpose of establishing state agency regional boundaries").

[2] See generally OCGA § 31-6-42 (a) (1)-(17) (listing general review considerations for the grant or denial of a CON); Ga. Comp. R. & Regs. § 111-2-2-.09 (1) (a)-(q) (same).

for home health services, set forth in Ga. Comp. R. & Regs. § 111-2-2-.32.[3] Having

concluded that five of the six applicants equally met the statutory considerations, the

Department proceeded to conduct a "tiebreaker" analysis, as outlined in Ga. Comp.

R. & Regs. § 111-2-2-.08 (1) (h).[4]

---

[3] See Ga. Comp. R. & Regs. r. 111-2-2.11 (1) (b) (3) (listing home health services as one of the categories for which the Department has adopted service-specific requirements and review considerations).

[4] Ga. Comp. R. & Regs. r. 111-2-2-.08 (1) (h) provides:

In evaluating batched applications, if any or all of the batched applications equally meet the statutory considerations, priority consideration will be given to a comparison of the applications with regard to:
1. The past and present records of the facility, and other existing facilities in Georgia, if any, owned by the same parent organization, regarding the provision of service to all segments of the population, particularly including Medicare, Medicaid, minority patients and those patients with limited or no ability to pay;
2. Specific services to be offered;
3. Appropriateness of the site, i.e., the accessibility to the population to be served, availability of utilities, transportation systems, adequacy of size, cost of acquisition, and cost to develop;
4. Demonstrated readiness to implement the project, including commitment of financing;
5. Patterns of past performance, if any, of the applicants in implementing previously approved projects in a timely fashion;
6. Past record, if any, of the applicant facility, and other existing facilities owned by the same parent organization, if any, in meeting licensure requirements and factors relevant to providing accessible, quality health

In a tiebreaker analysis, the Department must compare each application and determine which applicant earns the "advantage" for each of the tiebreaker criteria.[5] Here, with regard to the applications to establish a home health service in Cobb County, the Department awarded an advantage to Faith Medical Agency, LLC ("Faith Medical") on "Tiebreaker 3." Neither ProHealth nor any of the other applicants who sought to serve Cobb County earned a tiebreaker advantage. Accordingly, the Department issued the CON to Faith Medical to establish a new home health service to serve Cobb County. The remaining applications, including ProHealth's application, were denied.[6]

---

care;
7. Evidence of attention to factors of cost containment, which do not diminish the quality of care or safety of the patient, but which demonstrate sincere efforts to avoid significant costs unrelated to patient care; and
8. Past compliance, if any, with survey and post-approval reporting requirements and indigent and charity care commitments.

[5] See Ga. Comp. R. & Regs. r. 111-2-2-.08 (1) (h) (1)-(8).

[6] After awarding the advantage to applicant Five Points Healthcare of GA, LLC d/b/a Aveanna Home Health, the Department issued a CON to Aveanna to expand its existing home health service to include Fulton and Rockdale Counties.

ProHealth challenged the denial of its application by requesting an initial administrative appeal hearing before a hearing officer,[7] contending that the Department misapplied Tiebreaker 3.[8] The Hearing Officer agreed with ProHealth and granted summary judgment in its favor, reversing the Department's decision to deny ProHealth a CON. In doing so, the Hearing Officer rejected the Department's argument that because ProHealth had failed to initially oppose Faith Medical's application, ProHealth lacked standing to bring its appeal. The Hearing Officer further found that the Department had improperly applied Tiebreaker 3.

---

[7] See generally OCGA § 31-6-44 (a) (creating the Certificate of Need Appeal Panel).

[8] As noted above, Tiebreaker 3 refers to: "Appropriateness of the site, i.e., the accessibility to the population to be served, availability of utilities, transportation systems, adequacy of size, cost of acquisition, and cost to develop." ProHealth contended that reviewing "total project cost" under Tiebreaker 3 was inappropriate because Faith Medical had omitted certain costs from its application, which resulted in an unfair comparison.

Under former OCGA § 31-6-44,[9] the Department submitted an appeal to the Commissioner. The Commissioner found that ProHealth's appeal was a substantive attack on the Department's decision to approve Faith Medical's application and was thus effectively an untimely opposition of that application. In the Commissioner's view, ProHealth lacked standing to appeal the Department's decision to award a CON to Faith Medical because ProHealth had failed to comply with any of the threshold opposition requirements. The Commissioner alternatively found that ProHealth's challenge to the application of Tiebreaker 3 failed on the merits. The Commissioner thus reversed the Hearing Officer's decision (which had reversed the Department's decision to deny ProHealth a CON). Ultimately, the Commissioner affirmed the Department's initial decision awarding a CON to Faith Medical.

ProHealth then sought judicial review of this final agency decision.[10] After full briefing and argument, the superior court denied ProHealth's petition for review. The

---

[9] This case is governed by the former version of OCGA § 31-6-44, which provided for three levels of administrative review in the CON application process before reaching the superior court. Effective July 1, 2024, "[t]he decision of the appeal panel hearing officer shall constitute the final decision of the [D]epartment." OCGA § 31-6-44 (j).

[10] See OCGA § 31-6-44.1 (a).

superior court concluded, inter alia, that the Department properly found that ProHealth lacked standing to appeal the CON that was granted to Faith Medical. We granted ProHealth's application for discretionary review,[11] and this appeal followed.

On review of a superior court's order in an administrative proceeding, this Court's "duty is not to review whether the record supports the superior court's decision" but rather is to determine "whether the record supports the final decision of the administrative agency."[12] "We also determine whether the superior court has, in its own final ruling, committed an error of law."[13]

1. On appeal, ProHealth challenges the superior court's conclusion that the agency properly found that ProHealth lacked standing to appeal the Department's grant of a CON to Faith Medical. According to ProHealth, the denial of its application necessarily includes the Department's interpretation of tiebreaker criteria that

---

[11] See OCGA § 5-6-35 (a) (1).

[12] (Citation and punctuation omitted.) *Ga. Dept. of Community Health v. Satilla Health Svcs., Inc.*, 266 Ga. App. 880, 885 (1) (c) (598 SE2d 514) (2004).

[13] (Citation and punctuation omitted.) *Ga. Dept. of Community Health v. Emory University*, 351 Ga. App. 257, 262 (830 SE2d 628) (2019).

resulted in the denial of ProHealth's application and approval of Faith Medical's. We are not persuaded.

It is undisputed that the Certificate of Need Appeal Panel rules allow an applicant to appeal the denial of its own application;[14] however, because ProHealth's appeal is a substantive attack on the Department's decision to approve Faith Medical's application instead of ProHealth's application, the appeal is effectively an opposition to Faith Medical's application. As such, ProHealth was required to comply with certain conditions precedent, as contemplated by the appeal regulations.[15]

OCGA § 31-6-43 (h) states in part that the Department shall:

---

[14] See Ga. Comp. R. & Regs. r. 274-1-.03 (1) ("Any Applicant for a project . . . shall have the right to an initial administrative appeal hearing[.]").

[15] Ga. Comp. R. & Regs. r. 274-1-.03 (1) provides in full:

Any Applicant for a project, and any party that is permitted to oppose an application pursuant to paragraph (2) of subsection (d) of OCGA § 31-6-43 and has timely notified the Department, as required by the applicable certificate of need rules, prior to its decision that such party is opposed to the application before the Department, shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing.

See generally OCGA § 31-6-44 (c) (directing the CNAP to promulgate rules for initial administrative appeal hearings).

provide an opportunity for any party that is permitted to oppose an application pursuant to paragraph (2) of subsection (d) of this Code section [including a competing applicant in the same batching process, such as ProHealth[16]] to meet with the [D]epartment and to provide additional information to the [D]epartment. In order for any such opposing party to have standing to appeal an adverse decision pursuant to Code Section 31-6-44, such party *must* attend and participate in an opposition meeting.[17]

And, under OCGA § 31-6-44 (d):

*Any party that is permitted to oppose an application* pursuant to paragraph (2) of subsection (d) of Code Section 31-6-43 *that has notified the [D]epartment prior to its decision that such party is opposed to the application* before the [D]epartment shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing.[18]

---

[16] ProHealth does not argue that it was not permitted to oppose Faith Medical's application. See OCGA § 31-6-43 (d) (2) (B) ("No party may oppose an application for a certificate of need for a proposed project unless: . . . [s]uch party has submitted a competing application in the same batching cycle and is proposing to establish the same type of facility proposed or offers substantially similar services as proposed and has a service area that overlaps the applicant's proposed service area.").

[17] (Emphasis supplied.)

[18] (Emphasis supplied.)

Further, at the time of the batching cycle at issue, Department rules provided: "Any party who is opposed to one or more applications submitted during a batching cycle *must* submit a notice of opposition via the Department's web portal, on the form provided by the Department, no later than the sixtieth (60th) day of the batching review cycle."[19]

ProHealth does not contend that it complied with these mandatory requirements. Instead, ProHealth argues, as noted above, that the appeal of the denial of its own application "necessarily include[s] a discussion of the Department's application of the review criteria that were applied to ProHealth, including the Tiebreaker criteria that resulted in the denial of ProHealth and approval of Faith [Medical]'s." According to ProHealth, the Department's interpretation of the batching regulations would essentially require *all* applicants in a batching process to submit opposition statements to every other application in order to have any *meaningful* appeal rights."

---

[19] Ga. Comp. R. & Regs. r. 111-2-2-.08 (1) (g) (4) (2023) (emphasis supplied). Rule 111-2-2-.08 (1) (g) (4) was amended in 2025 to adjust the timeframe for submission of a notice of opposition from "the sixtieth (60th) day of the batching review cycle" to "30 days of receipt."

We are not persuaded by ProHealth's argument because its appeal is based entirely on the Department's decision to award an advantage to Faith Medical under Tiebreaker 3. Specifically, ProHealth complains that the Department erred by comparing the applicants' "total project costs" when Faith Medical's application was "clearly lacking" a category of costs that every CON applicant typically incurs (the costs associated with preparation of the CON application and participation in the statutory process). Thus, the substance of ProHealth's appeal is an untimely opposition of Faith Medical's application.

Reading the regulations as a whole,[20] the intent is to give applicants an opportunity to raise issues that go to the substance of a batched CON application so that the Department can consider and address those concerns *before awarding a CON*. Allowing ProHealth to circumvent the Department's opposition requirements by launching a collateral attack of a competitor's application under the guise of

---

[20] See *Premier Health Care Investments, LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 44 (3) (c) (849 SE2d 441) (2020) ("[I]t is well established that a statute should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part.") (citations and punctuation omitted).

challenging its own denial would render the mandatory[21] opposition requirements superfluous. And, because the Department's rules specifically allow for only one CON per county per batching cycle to be awarded, a reversal of the denial of ProHealth's application would necessarily mean the reversal of the grant of Faith Medical's application or an impermissible splitting of services.[22]

Because ProHealth failed to oppose Faith Medical's application for a CON, as outlined above, ProHealth lacks standing to appeal the grant of that CON even when framed as an appeal from the denial of ProHealth's application for a CON under the same batching cycle.[23]

---

[21] See, e.g., *State v. Henderson*, 263 Ga. 508, 510 (436 SE2d 209) (1993) ("[T]he plain meaning of 'must' is a command, synonymous with 'shall.'").

[22] See Ga. Comp. R. & Regs. r. 111-2-2-.32 (3) (b) (3) ("The Department shall only approve applications in which the applicant has applied to serve all of the unmet numerical need in any one county in which need is projected. The need within counties shall not be divided or shared between any two or more applicants.").

[23] See *Byrom v. Douglas Hospital, Inc.*, 338 Ga. App. 768, 772 n.2 (2) (792 SE2d 404) (2016) ("[W]e are bound by the substance, not nomenclature, of claims, and we should construe pleadings to bring about substantial justice.").

2. ProHealth argues that the Department arbitrarily applied Tiebreaker 3 to compare "total project costs." In light of our conclusion in Division 1 that ProHealth lacked standing, we explicitly do not address this claim of error.

*Judgment affirmed. Brown, C. J., and Barnes, P. J., concur.*